W. STEVEN SHUMWAY, ESQ. CSB #119351
2140 Professional Dr., Suite 250
Roseville, California 95661
(916) 789-8821

Attorneys for Debtor
in Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Sacramento Division

In re:

ROCKLIN FAMILY ENTERTAINMENT, LLC,

              Debtor.
_____/

CASE NO. 10-51840-A-11

DCN: TF-1

Date: January 14, 2011
Time: 10:00 a.m.
Courtroom 28

**DEBTOR'S RESPONSE TO MOTION TO CONVERT TO CHAPTER 7 OR ALTERNATIVELY TO DISMISS**

Debtor in Possession, Rocklin Family Entertainment, LLC, files the following response to Creditor TL Meadows, LLC's motion to convert the case to Chapter 7 or dismiss the case:

<u>**Background Information:**</u>

    1.    In order for the court to understand the parties and the dynamics involved in this case, Debtor sets forth the following brief background and history.

<u>**Parties:**</u>

    2.    Rocklin Family Entertainment, LLC is a limited liability company that owns and operates a 50 lane bowling and amusement center in Rocklin, California.

    3.    Kelvin Moss is a 13.5% member (investor) of the Debtor.

    4.    The company leases its building from Silversword

Properties, LLC., a limited liability company owned by Kelvin Moss.

5. In 2008, the Debtor obtained a $2,000,000.00 loan from Premier West Bank. In 2010, Kelvin Moss purchased that loan at a substantial discount from Premier West Bank through another of his limited liability companies, TL Meadows, LLC.

**History:**

6. In 2006, Mr. Moss agreed to purchase the real property on which the business is located and construct a 62,000 square foot shell for the Debtor at a cost not to exceed $7,000,000. In return, Mr. Moss was to receive an 8.0% interest in the Debtor and Debtor was to sign a 240 month lease.

7. During construction, the price of steel doubled, concrete costs increased and other cost overruns were encountered.

8. Mr. Moss agreed to loan the Debtor an additional $500,000 to cover part of the cost overruns by building the repayment into the lease with an 18% rate of return. He also agreed to make a loan to the Debtor for $500,000 at 10% interest, amortized over 10 years. He demanded an additional 5.5% interest in the Debtor as part of this loan.

9. Debtor has spent $7,000,000 on tenant improvements and equipment and associated costs in getting the business open. Part of the money is equity and part is through loans.

10. In December 2007, Debtor obtained a $2,000,000 loan from Premier West Bank and a $2,000,000 loan from the Small

Business Administration.  The purpose of these loans were to amortize and pay off construction and start up loans and cost and provide some working capital to Debtor.

11. At close of escrow on the SBA loan, Mr. Moss refused to sign off as the landlord on assignment of lease for the SBA loan unless the $500,000 (10year) loan was paid in full.  Debtor paid this loan but doing removed all working capital from the loan proceeds.

12. Mr. Moss, through Silversword Properties, LLC, leases the property and shell to Debtor, who paid for all tenant improvements and fixtures in the building.

13. In connection with the loan from Premier West Bank and the SBA(the lenders), Silversword Properties LLC (Moss) inserted a clause into the assignment of lease agreement that stated that if there was a default by Debtor, the lenders would not be able to exercise their rights to the collateral until they paid all rents due under the lease (the "Moss Clause").

14. Between 2007 and April 2009, due to the slow economy, Debtor tried to renegotiate its lease with Silversword.

15. In June 2009, Mr. Moss demanded that Debtor continue to make its lease payment and cease paying the lenders because he could protect the Debtor from the lenders with the "Moss Clause".  A meeting was held with the lenders, Mr. Moss and representatives of the Debtor to try to renegotiate all financing and lease agreements.

16. In September 2009, Silversword presented Debtor with a

3

forebearance and lease modification agreement that reduced rents on the condition that Debtor make no payments to the lenders. Debtor paid pursuant to the terms of this agreement from September 2009 until it filed Chapter 11. After presenting the agreement to Debtor, Silversword refused to sign it.

17. In August 2010, Mr. Moss through his company TL Meadows, LLC purchased the now delinquent loan from Premier West Bank at what is believed to be a substantial discount.

18. In November 2010, Mr. Moss through TL Meadows, LLC made demand for the delinquent payments that Mr. Moss through Silversword Properties, LLC had demanded the Debtor not pay as a condition of Debtor remaining in the property under the forebearance agreement.

19. TL Meadows then scheduled an auction of the Debtor's property and published the auction on the internet even though TL Meadows had not taken possession of the collateral. Debtor filed bankruptcy to avoid the chilling effect the publication of the auction was having on its business.

**Movant Has Not Established That the Estate is Being Diminished and There is No Likelyhood of Rehabilitation**

20. Movant motion is based on 11 USC 1112(b)(4)(A). However, movant has introduced no evidence of a continuing or substantial loss to the estate and that there is no likelihood that the business can be rehabilitated.

21. The only cause of any diminution in Debtor's income has been caused by the adverse publicity TL Meadows continues to

bring against the Debtor through the internet.

22. The majority of Debtor's debt is unsecured or under-secured. Debtor believes that it will be able to submit a plan that will meet the requirements of Section 1129(b) of the Bankruptcy Code. It will be able to structure a plan that will pay secured creditors the value of their collateral and unsecured creditors will receive more than they would in liquidation.

**Movant Has Not Established Any Other Cause for Conversiont or Dismissal**

23. Movant has not established that any of the other conditions set forth under 11 USC 1129(b)(4) exist:

24. Movant has not established that Debtor is being mismanaged. The Debtor is being managed by Jim Falls and Keith Burcham, both of whom have many years of experience in managing and operating bowling alleys.

25. Debtor maintains appropriate insurance. Debtor has provided the United States trustee with proof of the necessary insurance to continue operation of the business.

26. Debtor does not believe it is using Cash Collateral. The security agreement and UCC financing statement that Debtor executed does not identify profits as part of the collateral held.

27. Debtor has filed all documents and complied with all orders of the court.

28. Debtor has satisfied all filing and reporting requirements. No operating reports will be due by the date of

5

the hearing on this motion.  Debtor has complied with all requirements to date and will continue to comply.

29. By the date of this hearing, Debtor will have attended its meeting of creditors.

30. Debtor has provided the United States Trustee with all information requested.

31. There are no tax returns due yet.

32. The disclosure statement and plan are not due.

33. All accrued fees have been paid.

34. No plan has been proposed, so (L),(M),(N) and (P) do not apply.

35. Debtor does not have a domestic support obligation.

**There is a reasonable likelihood that a plan will be confirmed**

36. As stated above, the majority of Debtor's debt is either unsecured or under-secured.  Debtor believes it can propose a plan that will meet the requirements of Section 1129 within a reasonable time.

## CONCLUSION

There is no evidence that Debtor cannot rehabilitate its business and confirm a plan of reorganization.  Once the value of Debtor's assets are established, Debtor will propose a plan to reorganize and pay creditors as provided by statute and the plan.

Debtor requests Movant's motion be denied.


DATED: December 30, 2010        /s/ W. Steven Shumway
                                W. Steven Shumway, Attorney for Debtor